Matthew R. Mendelsohn, Esq.
David A. Mazie, Esq.
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 228-9898

Joseph G. Sauder
Matthew D. Schelkopf
Benjamin F. Johns
Joseph B. Kenney
**CHIMICLES & TIKELLIS LLP**
One Haverford Centre
361 W. Lancaster Avenue
Haverford, PA 19041
(610) 642-8500

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DANIEL LIGOTINO, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NORTH AMERICAN POWER AND GAS, LLC,<br><br>Defendant. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT AND JURY DEMAND** |

### PLAINTIFF'S CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff Daniel Ligotino brings this action against North American Power and Gas, LLC

("NAP" or "Defendant"), by and through his attorneys, individually and on behalf of all others

similarly situated, and alleges with personal knowledge as to his own actions, and upon information and belief as to those of others, as follows:

## INTRODUCTION

1. This case involves a classic bait-and-switch scheme. NAP markets its electricity and gas supply by representing to consumers that they will enjoy guaranteed savings as compared to local utilities' rates, and that they offer a competitive market rate.

2. Unfortunately for consumers, the representation that NAP customers enjoy savings is a lie. In fact, Defendant's rates are substantially higher than prevailing rates charged by local utilities and other independent energy supply companies ("ESCOs"). As a result, customers who switched to Defendant are being forced to pay energy rates that exceed the current market cost of energy by over 50%, and sometimes by over 200%.

3. Plaintiff brings this action to redress Defendant's violations of various states' consumer protection statutes and the common law.

## THE PARTIES

4. Plaintiff Daniel Ligotino ("Plaintiff Ligotino" or "Plaintiff") is a resident of the Township of Washington, New Jersey. Plaintiff received electricity and natural gas supply from NAP beginning in 2012.

5. Defendant NAP is a Connecticut limited liability corporation with its principal place of business located at 20 Glover Avenue, Norwalk, Connecticut 06850-1219.

6. At all times relevant herein, Defendant was engaged in the business of marketing, advertising and selling energy services to consumers in New Jersey.

## JURISDICTION AND VENUE

7.   Plaintiff is a citizen of the State of New Jersey and the putative class consists of citizens of the State of New Jersey.

8.   Defendant NAP is a limited liability company organized under the laws of the State of Connecticut with its principal place of business located in the State of Connecticut.

9.   NAP's status as a limited liability company renders it an "unincorporated association" pursuant to the Class Action Fairness Act ("CAFA") and under CAFA, an unincorporated association is a citizen of the state where it has its principal place of business and under whose laws it is organized.  *See* 28 U.S.C. § 1332(d)(10).[1]

10.   Therefore, jurisdiction in this civil action is authorized pursuant to 28 U.S.C. § 1332(d), as minimal diversity exists, there are more than 100 class members, and the amount in controversy is in excess of $5 million.  This court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.

---

[1] *Morano v. BMW of North America, LLC*, 928 F. Supp. 2d 826 (D.N.J. 2013) (the Court held that it had subject matter jurisdiction pursuant to CAFA because BMW of North America, LLC's citizenship was where it has its principal place of business and the state under whose law it is organized (New Jersey and Delaware) and Plaintiff's citizenship was Florida); *Ferrell v. Express Check Advance of SC LLC*, 591 F.3d 698 (4th Cir. 2010) ("In this appeal, we hold that, for purposes of determining subject matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), Pub.L. No. 109–2, 119 Stat. 4 (codified in scattered sections of Title 28, United States Code), a limited liability company is an "unincorporated association" as that term is used in 28 U.S.C. § 1332(d)(10) and therefore is a citizen of the State under whose laws it is organized and the State where it has its principal place of business."); *Heckemeyer v. NRT Missouri, LLC*, 4:12CV01532 AGF, 2013 WL 2250429 (E.D. Mo. May 22, 2013), appeal dismissed (June 21, 2013) ("Congress chose to treat LLCs like corporations for purposes of determining citizenship under CAFA.").

11. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendant transacts business in this district, is subject to personal jurisdiction in this district, and therefore is deemed to be a citizen of this district.

12. This court has personal jurisdiction over Defendant because it has conducted substantial business in this judicial district and has advertised and marketed its energy services within the State of New Jersey.

## TOLLING OF STATUTES OF LIMITATION

13. Any applicable statute(s) of limitations has been tolled by Defendant's knowing and active concealment and denial of the facts alleged herein. Plaintiff and the Class could not have reasonably discovered the fraudulent nature of Defendant's communications shortly until after becoming Defendant's customers.

14. Defendant was and remains under a continuing duty to disclose to Plaintiff and the Class the true character, quality, and nature of the pricing for NAP's services, that it does not offer a competitive market rate, and that consumers will not save any money by purchasing electricity and natural gas from NAP but will instead be charged rates substantially higher than those offered by utilities and other ESCOs. As a result of Defendant's material misrepresentations and/or active concealment, any and all statutes of limitations otherwise applicable to the allegations herein have been tolled.

## FACTUAL ALLEGATIONS

15. In 1999, the Electric Discount and Energy Competition Act ("EDECA") was signed into law. The EDECA deregulated energy in New Jersey in order to allow for

companies other than the local public utility to supply energy to commercial and residential properties in New Jersey.

16. In enacting the EDECA, the New Jersey legislature stated that the law was designed to "[l]ower the current high cost of energy, and improve the quality and choices of service, for all of [New Jersey's] residential, business and institutional consumers" as well as to "[p]lace greater reliance on competitive markets, where such markets exist, to deliver energy services to consumers in greater variety and at lower cost than traditional, bundled public utility service."[2]

17. Defendant began supplying energy to commercial and residential customers in Connecticut in or around 2009 as a third party energy supplier. Shortly thereafter Defendant expanded to other states, including Georgia, New Jersey, Illinois, Maryland, New Hampshire, Maine, New York, Pennsylvania, Rhode Island, and Texas.

18. Defendant's marketing materials and representatives guarantee consumers that if they switched to NAP from their local utilities, they will enjoy guaranteed savings and be charged a competitive market rate.

19. For example, when customers sign up with NAP, they receive a letter that informs them what rate they will be charged for electricity and/or natural gas. That letter states:

> **Your better energy choice starts soon. The feel good starts now.** Your Welcome to Change supply rate of **0.[XXX]** will begin on the date of the next regularly scheduled meter reading and will remain the same for the first 2 months.

---

[2] *See* Electric Discount and Energy Comp. Act, P.L. 1999, sec.2(a)(1)-(2) eff. Jan. 25, 1999, *available at* http://www.njleg.state.nj.us/9899/Bills/s0500/7_i1.pdf (last visited Apr. 3, 2014).

20.     Attached as Exhibit 1 is the letter Plaintiff Ligotino received after switching from New Jersey Public Service Electric and Gas Company ("PSE&G") to NAP.

21.     On its website, Defendant makes numerous representations about the energy savings consumers can expect when switching from their local utility to Defendant:

- Let's help consumers save money on their electricity.[3]
- Simply by offering competitive rates to electric and gas customers, we've managed to offer much needed relief to hundreds of thousands of families, saving millions of dollars in a time of economic uncertainty.[4]
- Saving money on your energy supply with one company while that supply is still being delivered and serviced by your local utility is a fairly new concept. It's only natural that people are more than a little skeptical. We understand. Magellan had to convince people the world is round.[5]
- How can North American Power save me money on my electricity?[6]
- When your state deregulated its energy market it opened the industry to competition and allowed companies like North American Power to buy energy in the wholesale markets and pass the savings on to you.[7]
- Why can't my local utility do what you do and lower their supply rates?[8]
- Our local utilities enter into long-term fixed-rate contracts to help protect their customers from changes in generation costs, but they pay a premium for the decreased risk.[9]
- You'll notice your new low supply rate with North American Power. Your utility will continue to service your energy lines, deliver your energy, and respond to any emergencies, just as they always have.[10]
- We buy our electricity and gas from suppliers at wholesale prices, which allows us to drive costs down. We then take those savings and pass them down to our customers with green electric and clean gas. We're always working to provide you with the most competitive rates we can. It's the least we can do.[11]

---

[3] *See* http://www.napower.com/overview (last visited Mar. 28, 2014).
[4] *See* http://www.napower.com/about-us/our-story (last visited Mar. 28, 2014).
[5] *See* http://www.napower.com/faq (last visited Mar. 28, 2014)
[6] *See id.*
[7] *See id.*
[8] *See id.*
[9] *See id.*
[10] *See* http://www.napower.com/rates-and-plans (last visited Mar. 28, 2014).
[11] *See* http://www.napower.com/our-benefits#lowrates (last visited Mar. 28, 2014).

22. A reasonable consumer who viewed any of Defendant's advertising materials would interpret such advertising materials to mean that switching to NAP from their local utility would result in monthly energy savings and lower utility bills.

23. The representation that customers will enjoy guaranteed savings is, however, false and misleading because NAP charges its customers rates that are substantially higher than that of local utilities.

24. In 2012, Plaintiff Ligotino switched from PSE&G to NAP for his electricity service based on Defendant's representations that its pricing would reduce his utility bill and guarantee him monthly savings as compared to PSE&G's energy rates. A few months later, NAP informed Plaintiff Ligotino that it could also provide his gas service and again made representations that its pricing would reduce his utility bill and guarantee him monthly savings as compared to PSE&G's energy rates.

25. At the outset, Plaintiff Ligotino noticed that NAP was charging him roughly the same as PSE&G would charge, or slightly less. After a few months of service, Plaintiff Ligotino stopped looking at his electric bills with heightened scrutiny, believing NAP's representations to be true.

26. Over the past few months, Plaintiff Ligotino's charges from NAP for his energy have increased substantially. For example, Plaintiff Ligotino's monthly statement for February 2014 listed his NAP charges as well as PSE&G's price to compare. NAP charged Plaintiff Ligotino $260.91 for gas and $87.96 for electric. PSE&G, on the other hand, would have charged Plaintiff Ligotino $81.11 for gas and $30.90 for electric. NAP charged Plaintiff Ligotino over 200% more for gas than PSE&G would have during the same month, and over

175% more for electric than PSE&G would have charged Plaintiff Ligotino during the same month.

27. Plaintiff Ligotino's monthly statement for January 2014 paints a similar picture, as NAP charged Plaintiff Ligotino $155.27 for gas and $85.56 for electric. PSE&G, on the other hand, would have charged Plaintiff Ligotino $87.16 for gas and $30.12 for electric. NAP charged Plaintiff Ligotino over 78% more for gas and over 180% more for electric than PSE&G would have charged Plaintiff Ligotino during the same month.

28. After receiving the above bills, Plaintiff Ligotino called and asked for an explanation of the high pricing on his energy bills. NAP explained that Plaintiff Ligotino had enrolled onto a variable rate plan and that he was not in a long-term fixed price contract. This was the first time NAP informed Plaintiff Ligotino that its contracts used variable rates instead of fixed rates.

29. Plaintiff Ligotino has since requested to cancel his NAP energy services and switch back to his local utility, PSE&G, because NAP is not saving him money on his monthly utility as NAP originally represented to Plaintiff Ligotino.

30. NAP's representations that its rates are competitive, based on market conditions, and will result in savings on its customers' energy bills are false and misleading. In fact, local utilities' and other ESCO's rates that are based on market conditions are substantially lower than NAP's.

31. Defendant's representations that consumers will save money and lower their utility bills are material, as price is the most important consideration for any reasonable consumer when selecting the supplier of a fungible service like energy. No reasonable consumer

who had knowledge of Defendant's business practices would choose NAP as his or her energy supplier.

32. Defendant's unlawful, false, deceptive and misleading advertising materials induced thousands of customers, including Plaintiff and the Class, to reasonably believe selecting Defendant's energy services would result in a reduction of energy costs as compared to their local utility.

33. As a result of Defendant's false and misleading representations regarding the rate it will charge new customers, Plaintiff and other similarly situated consumers in New Jersey and Pennsylvania were injured because they were charged a rate by NAP that was substantially higher than the rates charged by local utilities and other ESCOs whose rates are in fact competitive and based on market conditions.

34. But for Defendant's false and misleading representations regarding the rates it will charge new customers, Plaintiff and other similarly situated would not have switched to NAP. In fact, the only reason any reasonable consumer switches to an ESCO like NAP is for the chance to enjoy potential savings over the rates offered by local utilities.

## CLASS ACTION ALLEGATIONS

35. Plaintiff brings this action individually, and on behalf of a class, pursuant to FED. R. CIV. P. 23(a), 23(b)(2), and/or 23(b)(3); specifically, the following Class:

> **The New Jersey Class**
> All New Jersey persons or entities who are current or former natural gas and/or electric customers of Defendant.

Excluded from the Class is Defendant, its affiliates, employees, officers and directors, and the Judge(s) assigned to this case. Plaintiff reserves the right to modify the Class definition if

discovery and/or further investigation reveal that they should be expanded or otherwise modified.

36. <u>Numerosity</u>: The Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual Class members are unknown at this time, such information being in the sole possession of Defendant and obtainable by Plaintiff only through the discovery process, Plaintiff believes that thousands of class members have been fraudulently induced to switch to NAP for their utility services.

37. <u>Existence and Predominance of Common Questions of Fact and Law</u>: Common questions or law and fact exist as to all Class members. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

      a. Whether Defendant's marketing materials were materially misleading.
      b. Whether Defendant failed to disclose material information to Plaintiff and the Class.
      c. Extent and measurement of classwide damages, and nature of other appropriate relief.

38. <u>Typicality</u>: The claims of the representative Plaintiff is typical of the claims of the Class in that the representative Plaintiff, like all Class members, was deceptively induced to drop his current energy provider and switch to Defendant. The representative Plaintiff, like all Class members, has been damaged by Defendant's misconduct in that he has incurred or will incur substantially higher utility bills then he otherwise would have had he remained with his previous provider. Furthermore, the factual bases of Defendant's misconduct are common to all Class members and represent a common thread resulting in injury to all Class members.

39. <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the Class members. Plaintiff has retained attorneys experienced in the prosecution of class actions,

including consumer fraud class actions involving ESCOs, and Plaintiff intends to prosecute this action vigorously.

40.     <u>Superiority</u>:  Plaintiff and the Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent a class action, most Class members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  Because of the relatively small size of the individual Class members' claims, it is likely that only a few Class members could afford to seek legal redress for Defendant's misconduct.  Absent a class action, Class members will continue to incur damages, and Defendant's misconduct will continue without remedy.  Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

41.     Defendant has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

## VIOLATIONS ALLEGED

### COUNT I
**VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT ("NJCFA")**
**N.J. STAT. ANN. § 56:8-1** *et seq.*

42.     Plaintiff and the Class incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

43. Plaintiff brings this cause of action on behalf of himself and on behalf of the members of the New Jersey Class against Defendant.

44. The NJCFA was enacted to protect citizens from deceptive, fraudulent, and misleading commercial practices and makes such practices unlawful.

45. The aforementioned unlawful, false, deceptive, and misleading statements by Defendant constitutes a violation of N.J. STAT. ANN. § 56:8-2 because Defendant made affirmative misrepresentations regarding the methodology Defendant used to calculate Plaintiff's and the Class' energy rates.

46. The aforementioned unlawful, false, deceptive, and misleading advertisements by Defendant constitute a violation of N.J. STAT. ANN. § 56:8-2 because Defendant knowingly omitted and concealed material facts regarding the methodology Defendant used to calculate Plaintiff's and the Class' energy rates, that its rates are competitive and based on market conditions and that consumers would save money by switching to Defendant from their local utilities, and Defendant knew that Plaintiff and the Class would rely on such omissions and concealments.

47. The aforementioned unlawful, false, deceptive, and misleading advertisements by Defendant constitutes a violation of N.J. ADMIN. CODE § 13:45A-9.2(a)(9) because the advertisements were a "false or misleading representation of facts concerning the reasons for, existence or amounts of price reductions, [and] the nature of an offering."

48. Defendant's advertisements also violated the NJCFA because they contained materially misleading (and false) statements, and omitted material information.

49. As a result of Defendant's conduct, Plaintiff and Class members have suffered an ascertainable loss in the form of direct monetary losses.

50. A causal relationship exists between Defendant's unlawful, false, deceptive, and misleading conduct and the Plaintiff's and the putative Class' injuries, including, but not limited to, Defendant's exorbitant and excessive energy rates that Plaintiff was charged. Had Defendant not engaged in the aforementioned deceptive conduct, Plaintiff and the putative Class' would not have switched to Defendants' energy services.

51. Notice of this lawsuit is being provided to the New Jersey Attorney General as required by N.J. STAT. ANN. § 56:8-20.

## COUNT II
### VIOLATIONS OF THE NEW JERSEY TRUTH-IN-CONSUMER CONTRACT, WARRANTY AND NOTICE ACT, N.J. STAT. ANN. § 56:12 *et seq.* ("TCCWNA")

52. Plaintiff and the Class incorporate by reference each preceding and each succeeding paragraph as though fully set forth herein

53. Plaintiff Ligotino brings this cause of action on behalf of himself and on behalf of the members of the New Jersey Class against Defendant.

54. To the extent there were contracts formed between Defendant and Plaintiff and the Class, the terms of such contracts were not "written in a simple, clear, understandable and easily readable way" in violation of N.J. STAT. ANN. § 56:12-2.

55. The TCCWNA entitles Plaintiff and the Class to recover their actual damages and $100.00, together with reasonable attorney's fees and court costs pursuant to N.J. STAT. ANN. § 56:12-2.

56. As a result of Defendant's conduct, Plaintiff and the Class have suffered an ascertainable loss in the form of direct monetary losses.

57. A causal relationship exists between Defendant's unlawful, false, deceptive, and misleading conduct and the Plaintiff's and the Class' injuries, including, but not limited to,

Defendant's exorbitant and excessive energy rates that Plaintiff was charged.  Had Defendant not engaged in the aforementioned deceptive conduct, Plaintiff and the Class would not have selected Defendant as their energy supplier.

## COUNT III
## BREACH OF CONTRACT

58. Plaintiff and the Class incorporate by reference each preceding and each succeeding paragraph as though fully set forth herein.

59. Plaintiff brings this cause of action on behalf of himself and on behalf of the members of the Class against Defendant.

60. Defendant's offer to Plaintiff and the Class to provide energy at a cost less than their local utility and to charge competitive rates based on market conditions constituted a contract offer whereby Plaintiff and the Class members were solicited to sign up for energy services from Defendant in exchange for a rate based on agreed-upon factors.

61. Plaintiff and the Class members accepted Defendant's offer by signing up with Defendant, thereby creating a legally enforceable agreement between Defendant and Plaintiff and the Class members.  Plaintiff and the Class members performed their obligations under the contract.

62. Defendant charged Plaintiff and the Class energy rates that were not lower than their local utilities and were not competitive or based on market conditions.

63. Defendant's failure to charge competitive energy rates that were lower than consumers' local utilities and not based on market conditions and not competitive constituted a breach of the legally enforceable agreement between the parties.

64. As a result of Defendant's conduct, Plaintiff and the Class members have suffered an ascertainable loss in the form of direct monetary losses.

65. A causal relationship exists between Defendant's breach of contract and the Plaintiff's and the putative Class' injuries, including, but not limited to, the amount of money Plaintiff paid over the current market rate of energy.

## COUNT IV
## UNJUST ENRICHMENT

66. Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

67. Plaintiff brings this cause of action on behalf of himself and on behalf of the members of the Class against Defendant. This claim is plead in the alternative to Plaintiff's contract claims.

68. Plaintiff and the Class members conferred a tangible economic benefit upon Defendant by contracting with Defendant for energy. Plaintiff and the Class members would not have contracted with Defendant for energy had they known that Defendant would charge rates substantially in excess of those charged by local utilities.

69. Failing to require Defendant to provide remuneration under these circumstances would result in Defendant being unjustly enriched at the expense of Plaintiff and the Class members.

70. Defendant's retention of the benefit conferred upon them by Plaintiff and members of the Class would be unjust and inequitable.

## COUNT V
## INJUNCTION AND/OR DECLARATORY JUDGMENT

71. Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

72. Appropriate injunctive and/or declaratory relief is appropriate and necessary to remedy Defendant's wrongful conduct and to prevent the wrongful conduct from continuing. This relief should include, *inter alia*, entry of a preliminary and permanent injunction, requiring Defendant to provide appropriate curative notice to all Class members of the material information that was omitted and/or misstated, entry of a declaratory judgment that Defendant's marketing materials are materially misleading, and a Court order requiring Defendant to correct any such marketing materials going forward.

73. With respect to the Defendant's conduct going forward, Plaintiff lacks an adequate legal remedy and will suffer irreparable injury absent appropriate equitable relief.

## PRAYER FOR RELIEF

a. Determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class;

b. Appoint Plaintiff as the representative of the Class and their counsel as Class counsel;

c. Award all actual, general, special, incidental, statutory, treble, punitive, and consequential damages to which Plaintiff and the Class members are entitled;

d. Award pre-judgment and post-judgment interest on such monetary relief;

e. Award injunctive relief is appropriate and necessary to remedy Defendant's wrongful conduct and to prevent the wrongful conduct from continuing; and

f. Award all other relief deemed appropriate by the Court.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims and issues so triable.

By: _____
Matthew R. Mendelsohn
David A. Mazie
MAZIE SLATER KATZ & FREEMAN, LLC
103 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 228-9898

Joseph G. Sauder
Matthew D. Schelkopf
Benjamin F. Johns
Joseph B. Kenney
CHIMICLES & TIKELLIS LLP
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500

*Proposed Lead Attorneys for Plaintiff and the Class*

# **EXHIBIT 1**

3/16/2014                                                                                      Print

Subject:  Thank You!
From:     North American Power and Gas, LLC (info@napower.com)
To:       DLIGOTINO@YAHOO.COM;
Date:     Wednesday, April 18, 2012 11:14 AM

To view this email as a web page, go here.



# Thank You!

### Your better energy choice starts soon. The feel good starts now.

Your Welcome to Change supply rate of **0.08990** will begin on the date of the next regularly scheduled meter reading and will remain the same for the first 2 months.

Thank you for choosing North American Power as your electricity supplier. By choosing our standard 25% renewable electricity product, you have joined a movement of individuals helping to foster a healthier and more sustainable future for ourselves and future generations. Plus, thanks to our Mission to Millions program, we will now be giving back to the charitable organization of your choice.

We believe that individuals have the power to change the world and together we can harness this power of change to directly improve our environment, our communities, and ourselves.

This email confirms the request for North American Power to supply the electricity at a month to month market based rate at the following address:

326 JACKSON AVE
WASHINGTON TWP DR NJ 07676

If the information above is incorrect, please contact us at:
customercare@napower.com or 888.313.9086.